| STATE OF INDIANA | ) | HUNTINGTON COUNTY SUPERIOR COURTS |
| --- | --- | --- |
| COUNTY OF HUNTINGTON | ) ) | CAUSE NUMBER: **35D01 1510 PL 000 687** |

ANNE VAUGHT as Personal Representative of the )
ESTATE OF DAVID VAUGHT and individually, )
                 Plaintiff, )
vs. )    **JURY TRIAL REQUESTED**
                 )
QUALITY CORRECTIONAL CARE, LLC, )
REBECCA COOK, R.N., in her individual and )
official capacities, KELLEY CARROLL, N.P., in )
her individual and official capacities, SHERIFF )
MARCUS E. GATTON in his official capacity, )
SHERIFF MARK E. HODGES in his individual )
and official capacities, STEVE MYERS in his )
individual and official capacities, SAMUEL )
GILLESPIE in his individual and official capacities, )
B. ANDERSON in his individual and official )
capacities, and LAUREN SCHMIDT in his )
individual and official capacities, )
                 Defendants. )

**FILED**

**OCT 0 8 2015**

Kimi Weigers
Clerk Huntington Superior Court

## COMPLAINT

Plaintiff, Anne Vaught, as the Personal Representative of the Estate David Vaught and individually, (hereinafter "Mrs. Vaught"), for her Complaint for damages against Defendants Quality Correctional Care, LLC (hereinafter "Quality"), Rebecca Cook, R.N. (hereinafter "Nurse Cook") in her individual and official capacities, Kelley Carroll, N.P. (hereinafter "Nurse Carroll") in her individual and official capacities, Sheriff Marcus E. Gatton (hereinafter "Sheriff Gatton") in his official capacity, Sheriff Mark E. Hodges (hereinafter "Sheriff Hodges") in his individual and official capacities, Officer Steve Myers (hereinafter "Officer Myers") in his individual and official capacities, Officer Samuel Gillespie (hereinafter "Officer Gillespie") in his individual and official capacities, Officer B. Anderson (hereinafter "Officer Anderson") in his individual and official capacities, and Officer Lauren Schmidt (hereinafter "Officer Schmidt") in his individual and official capacities, and states as follows:

1

## INTRODUCTION

1. The Plaintiffs seeks money damages against Defendants for violation of rights as guaranteed under the United States Constitution, Indiana State Constitution, and/or Indiana common law.

## JURISDICTION AND VENUE

2. Jurisdiction and venue in this Court are proper because a substantial portion of the events or omissions giving rise to this Complaint occurred in Huntington County, Indiana.

3. Timely Notices of Tort Claim were sent for Mr. Vaught, Mr. Vaught's Estate, and Mrs. Vaught.

## PARTIES

4. David Vaught (hereinafter "Mr. Vaught") resided in Huntington County, Indiana before his death on or about April 24, 2014.

5. Mrs. Vaught is an adult citizen of the United States and is a resident of Huntington County, Indiana. Mrs. Vaught was appointed as the Personal Representative of Mr. Vaught's estate by the Huntington County Circuit Court pursuant to cause number 35C01-1409-ES-000075.

6. Quality Correctional Care, LLC is a domestic company located in Muncie, Indiana, which, at all times relevant to this Complaint, contracted with the Whitely County Sheriff's Department to be the medical provider for its jail facility.

7. Nurse Cook is or, at all times relevant to this Complaint, was an employee and/or agent of Quality Correctional Care, LLC.

8. Nurse Carroll is or, at all times relevant to this Complaint, was an employee and/or agent of Quality Correctional Care, LLC.

2

9. Sheriff Marcus Gatton is the current duly elected Sheriff of the Whitley County Sheriff's Department.

10. Sheriff Mark E. Hodges was, at all times relevant to this Complaint, the duly elected sheriff of the Whitley County Sheriff's Department.

11. Officer Myers is, or was at all times relevant to this Complaint, an officer employed by the Whitley County Sheriff's Department.

12. Officer Gillespie is, or was at all times relevant to this Complaint, an officer employed by the Whitley County Sheriff's Department.

13. Officer Anderson is, or was at all times relevant to this Complaint, an officer employed by the Whitley County Sheriff's Department.

14. Officer Schmidt is, or was at all times relevant to this Complaint, an officer employed by the Whitley County Sheriff's Department.

## FACTUAL BACKGROUND

15. Prior to December 2, 2013, David Vaught worked as a millwright, requiring him to actively engage in physical labor on a regular basis.

16. On or about December 2, 2013, Mr. Vaught was convicted under cause number 92D01-1306-FD-0369 for Operating a Vehicle While Intoxicated. Mr. Vaught was incarcerated in the Whitley County Jail and Whitely County Jail intake procedures occurred that same day.

17. During the intake procedures, Whitley County Sheriff Department employee Beth Lehman completed Whitley County Jail's Standard Medical Questions form that noted that Mr. Vaught had no visible signs of obvious pain, no ease of movement or visible body deformities, and did not have a shortness of breath.

3

18. On or about December 20, 2013, Mr. Vaught began to display signs of illness, including, but not limited to coughing, pain, shortness of breath, and weakness. Mr. Vaught reported his symptoms to the staff of the Whitley County Jail and/or Quality Correctional Care, but he was not treated at that time.

19. On or about January 4, 2014, Whitley County Sheriff's Department Corrections Officer Lauren Schmidt received a call from Mrs. Anne Vaught. Mrs. Vaught relayed her concerns about Mr. Vaught's health, as she had visited Mr. Vaught that day and noticed that he appeared shaky and in a mental "fog" or words to that effect.

20. On or about January 5, 2014, Nurse Cook noted that Mr. Vaught was "slow to answer questions" and "feels foggy" or words to that effect.

21. Mr. Vaught requested to see a doctor due to his coughing. He was told by a nurse that he would be seen by a doctor the next time the doctor was in the facility or words to that effect.

22. Mrs. Vaught contact the facility regarding Mr. Vaught's symptoms and suggested that staff check his medication levels.

23. On or about January 17, 2014, Nurse Carroll determined that Mr. Vaught was taking medication at a rate which exceeded the maximum recommended dose and reduced his intake of that medication.

24. On or about January 24, 2014, Mr. Vaught completed an Inmate Request Form which noted that he had chest and shoulder pains as well as pain around his right lung.

25. Nurse Cook responded that "sounds like some pulled muscles. Your (sic) on Tylenol, so I added ibuprofen" or words to that effect.

26. On or about January 26, 2014, Mr. Vaught received an x-ray that indicated that he hemithorax opacification.

27. On or about January 28, 2014, Nurse Cook responded to Mr. Vaught's January 24th request again, stating that there were "no further c/o discomfort from inmate" or words to that effect.

28. On or about February 2, 2014, Corrections Officers Samuel Gillespie and B. Anderson observed Mr. Vaught ask for an ambulance.

29. Officer Anderson escorted Mr. Vaught to the medical room and completed a Medical Notification Form indicating that Mr. Vaught was having breathing issues and that he was holding his right side and coughing.

30. Nurse Cook then looked at Mr. Vaught and determined that he was suffering from intercostal rib pain. Nurse Cook also decided that a chest x-ray would be held until the labs were reviewed.

31. Mr. Vaught was seen by Nurse Cook and/or Nurse Carroll on or about February 3, 2014, when a CBC was performed, February 4, 2014, and February 5, 2014. On those days, Mr. Vaught was noted to have right rib or side pain, a harsh cough, and/or diminished air flow in his lungs.

32. An x-ray was completed on February 6, 2014. The results noted that "[t]here is almost complete opacification of right hemithorax due to extensive entire-lung pneumonia or pneumonectomy or pleural effusion" or words to that effect.

33. Further, due to his medical condition, it became unsafe for Mr. Vaught to travel to the cafeteria for his food. However, Mr. Vaught was offered no assistance to get him to the cafeteria or to bring him food or water.

34. Another inmate attempted to bring Mr. Vaught juice from the cafeteria, but was stopped by a guard.

35. On or about February 7, 2014, Mr. Vaught continued to show signs of illness and was transported to Parkview Medical Center, presenting with shortness of breath and lower extremity edema.

36. At that time, Mrs. Vaught was listed as Mr. Vaught's emergency contact. However, Mrs. Vaught was not contacted regarding Mr. Vaught's transport to the Parkview Medical Center or his underlying medical conditions.

37. While at the Parkview Medical Center, Mr. Vaught was required to undergo a thoracic procedure or surgery to alleviate an effusion and/or a pneumothorax on or about February 7, 2014, and February 17, 2014.

38. Nurse Cook was given notice on or about March 5, 2014, by Sara Zook, R.N. with the Parkview Medical Center that Mr. Vaught would be returned to the care of the Whitley County Jail and/or Quality Correctional Care soon. In her notes regarding the call, Nurse Cook indicated that Officer Steve Myers saw Mr. Vaught on or about March 1, 2014, and that Mr. Vaught was still using oxygen and had a full time "sitter."

39. That same day Nurse Cook spoke with Sheriff Hodges regarding Mr. Vaught's medical condition and the special needs he would have upon return to the Whitley County Jail and Sheriff Hodges then signed a letter to Superior Court Judge Douglas Fahl requesting that Mr. Vaught be placed on house arrest for the remainder of his sentence.

40. In that letter, Sheriff Hodges noted Mr. Vaught's need of 24 hour nursing care and the needs that Mr. Vaught would require upon his return to the Whitley County Jail, including, a walker, full time oxygen, and assistance bathing, dressing, and with other activities of daily living.

41. On or about March 6, 2014, Mrs. Vaught received a call from Sara Zook, R.N., regarding Mr. Vaught's discharge and transport from Parkview Medical Center back to the Whitley County Jail. R.N. Zook indicated to Mrs. Vaught that Mr. Vaught needed to be transferred to rehab and indicated that Nurse Cook would be able to care for Mr. Vaught. Mrs. Vaught then called and spoke with Nurse Cook regarding her ability to care for Mr. Vaught.

42. Mrs. Vaught was not informed that Mr. Vaught was going to be discharged into her care.

43. On or about March 7, 2014, Mrs. Vaught went to the Parkview Medical Center to be with Mr. Vaught prior to his discharge to the Whitley County Jail.

44. Mrs. Vaught spoke to the officer that arrived to transport Mr. Vaught back to the Whitley County Jail. During that conversation, Mrs. Vaught indicated that Mr. Vaught should not be transported back to the Whitley County Jail, as he could not dress himself, go to the bathroom alone, or use a phone in case of emergency.

45. The officer left the room for a few moments, and upon his return, Mrs. Vaught received a call from the Whitley County Jail.

46. During that call, Mrs. Vaught was informed that Mr. Vaught's sentence had been modified and that he would be released into her custody that day.

47. Specifically, that same day Whitely County Superior Court One issued an order recognizing Mr. Vaught's serious medical condition and released Mr. Vaught to probation for one (1) year with the requirement that he return to Whitley County Jail at the end of that year.

48. Mrs. Vaught indicated that she did not know if she could secure affordable insurance that day.

7

49. However, Mr. Vaught was discharged from the Parkview Medical Center to the Whitley County Jail on or about March 7, 2014. Upon discharge, Mr. Vaught was given discharge instructions, which included, orders to take approximately eight (8) prescriptions and use a rolling walker.

50. Further, while Mr. Vaught had underwent surgery and completed an antibiotic treatment, he was scheduled for follow-up visits for his right pleural effusion.

51. According to medical personnel at the Parkview Medical Center, "it quickly became apparent to the [jail] personnel that they would not be able to care for him."

52. At that jail, Mr. Vaught was discharged to Mrs. Vaught, who was not provided with Mr. Vaught's discharge plan, prescription, instructions for wound care, ordered equipment, and/or other necessities.

53. Sheriff Hodges assisted Mrs. Vaught in getting Mr. Vaught into her car. He also stated that he believed Mr. Vaught was released from the hospital too soon and that Mrs. Vaught should consider taking him to a rehab facility or words to that effect.

54. On or about March 8, 2014, Mrs. Vaught realized that she had not been provided with a copy of Mr. Vaught's prescriptions. She contacted the Parkview Medical Center, which indicated that because Mr. Vaught had been discharged to the Whitely County Jail, the jail had his prescriptions.

55. Mrs. Vaught then contacted the jail to request the information. The officer she spoke to indicated that there was nothing they could do. However, he eventually told Mrs. Vaught that a nurse would call her back.

56. Nurse Cook called Mrs. Vaught back and indicated to Mrs. Vaught that she had to come into work on her day off to assist her.

8

57. After looking in her paperwork, Nurse Cook indicated that she did not have the prescriptions in her file and had Mrs. Vaught read the labels of the medication to her. Nurse Cook then indicated that she would call in the prescriptions to a local pharmacy.

58. However, when Mrs. Vaught went to the pharmacy to pick up the medication, she found out they had been called in incorrectly.

59. While at their home, Mr. Vaught had continued coughing, weakness, exertional dyspnea with minimal exertion, profound distended abdomen, and weight loss. Mr. Vaught's wife returned Mr. Vaught to Parkview Medical Center for further treatment on or about March 12, 2014. Mr. Vaught was discharged from that facility into hospice care on or about March 20, 2014.

60. Mr. Vaught died on or about April 24, 2014.

61. During the time that she interacted with Mr. Vaught, Nurse Cook may or was dealing with personal family issues, including, but not limited to her husband's cancer and subsequent death, that may have affected her treatment of Mr. Vaught.

62. On or about September 9, 2014, the Huntington County Circuit Court granted Anne Vaught's petition to open an estate and appoint an administrator for the purpose of collecting damages for a civil action.

### COUNT I: Eighth and Fourteenth Amendment: Deliberate Indifference – Sheriff Hodges

63. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

64. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

65. Sheriff Hodges is a "person" within the meaning of 42 U.S.C. § 1983.

66. Sheriff Hodges's actions and/or omissions were taken under the color of state law based on his authority and official position as the Sheriff of the Whitley County Sheriff's Department.

67. Sheriff Hodges was deliberately indifferent to Mr. Vaught's serious health concerns.

68. As a result of Sheriff Hodges's deliberate indifference, Mr. Vaught experienced physical pain, embarrassment, mental and emotional distress, and/or other damages.

69. Due to the Defendant's unlawful actions or omissions, Mr. Vaught suffered compensable injury.

### COUNT II: Eighth and Fourteenth Amendments:
### Deliberate Indifference – Nurse Cook and Nurse Carroll

70. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

71. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

72. Nurse Cook is a "person" within the meaning of 42 U.S.C. § 1983.

73. Nurse Carroll is a "person" within the meaning of 42 U.S.C. § 1983.

74. The actions and/or omissions of Nurse Cook and Nurse Carroll were taken under the color of state law based on their authority and official position as a nurse and employee and/or agent of Quality Correctional Care.

75. Nurse Cook and/or Nurse Carroll knew or should have known of Mr. Vaught's serious medical needs beginning on or about and following December 20, 2014. However, Mr.

Vaught was not transported to Parkview Medical Center until on or about February 7, 2014.

76. Further, upon Mr. Vaught's discharge from Parkview Medical Center to Whitley County Jail, Nurse Cook and/or Nurse Carroll had knowledge of Mr. Vaught's specific medical needs. However, Nurse Cook and/or Nurse Carroll did not provide Mr. Vaught's prescriptions, discharge plan, and/or required medical equipment to Mrs. Vaught upon Mr. Vaught's subsequent release.

77. Nurse Cook and/or Nurse Carroll were deliberately indifferent to the treatment of Mr. Vaught's serious health concerns.

78. As a result of the deliberate indifference of Nurse Cook and Nurse Carroll, Mr. Vaught experienced physical pain, embarrassment, mental and emotional distress, and/or other damages.

79. Due to the Defendants' unlawful actions or omissions, Mr. Vaught suffered compensable injury.

### COUNT III: Eighth and Fourteenth Amendment:
### Deliberate Indifference – Officers Myers, Gillespie, Anderson, and Schmidt

80. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

81. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

82. Officers Myers, Gillespie, Anderson, and Schmidt are each considered a "person" within the meaning of 42 U.S.C. § 1983.

11

83. The actions and/or omissions of Officers Myers, Gillespie, Anderson, and Schmidt were taken under the color of state law based on their authority and official position as officers employed by the Whitley County Sheriff's Department.

84. Officers Myers, Gillespie, Anderson, and Schmidt knew or should have known of Mr. Vaught's serious medical conditions as his medical need was obvious.

85. Officers Myers, Gillespie, Anderson, and Schmidt were deliberately indifferent to the treatment of Mr. Vaught's serious health concerns.

86. As a result of the deliberate indifference of Officers Myers, Gillespie, Anderson, and Schmidt, Mr. Vaught experienced physical pain, embarrassment, mental and emotional distress, and/or other damages.

87. Due to the Defendants' unlawful actions or omissions, Mr. Vaught suffered compensable injury.

**COUNT IV: Wrongful Death – Whitley County Sheriff's Department**

88. Plaintiff incorporates by reference all allegations of the foregoing paragraph as though set forth herein.

89. Indiana Code § 34-23-1-1 states "[w]hen the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission."

90. Whitely County Sheriff's Department failed to provide appropriate care for Mr. Vaught.

91. The actions and/or omissions of Whitely County Sheriff's Department caused Mr. Vaught's death.

### COUNT V: Survival Act – Whitley County Sheriff's Department

92. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

93. Indiana Code § 34-9-3-4 states "[t]he personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived."

94. "While it is well established that a tortfeasor can be held liable pursuant to either the wrongful death statute or the Survival Act, but not both…Indiana Trial Rule 8(E) permits a party to plead alternative claims in a complaint." *Atterholt v. Robinson*, 872 N.E.2d 633, 640 (Ind. Ct. App. 2007).

95. Whitely County Sheriff's Department failed to provide adequate care for Mr. Vaught.

96. The actions and/or omissions of Whitely County Sheriff's Department caused injuries to Mr. Vaught that he would have been entitled to recovery under if he had lived.

### COUNT VI: *Monell* Claim – Whitley County Sheriff's Department

97. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

98. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

99. "A local governing body may be liable for monetary damages under §1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not

13

officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

100. Whitley County Sheriff's Department implemented a policy, custom, and/or practice that failed to protect Mr. Vaught's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

101. Whitley County Sheriff's Department's customs, policies, and/or practices were the direct cause and/or moving force behind Mr. Vaught's injury and suffering.

102. Due to the Defendant's unlawful actions or omissions, Mr. Vaught suffered compensable injury.

**COUNT VII: Intentional Infliction of Emotional Distress – Sheriff Hodges, Officers Myers, Gillespie, Anderson, and Schmidt, and Whitley County Sheriff's Department**

103. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

104. The tort of intentional infliction of emotional distress "arises when a defendant: (1) engages in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Creel v. I.C.E. & Associates, Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002).

105. The Defendants engaged in extreme and outrageous conduct that caused the Plaintiff severe emotional distress.

106. Due to the Defendant's unlawful actions or omissions, Mr. Vaught suffered compensable injury.

### COUNT VIII: Negligent Infliction of Emotional Distress – Sheriff Hodges, Officers Myers, Gillespie, Anderson, and Schmidt, and Whitley County Sheriff's Department

107. Plaintiffs incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

108. A Plaintiff may bring a claim of negligent infliction of emotional distress under the modified impact rule if the Plaintiff, having suffered a direct impact by the negligence of another, also sustains an emotional trauma "which is serious in nature and of a kind and extent normally expected to occur in a reasonable person..." *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991).

109. Mr. and Mrs. Vaught suffered the direct impact of the Defendants' negligent actions.

110. As a result of that direct impact, the Plaintiffs reasonably suffered serious and compensable emotional trauma.

111. Defendants are liable to Mr. and Mrs. Vaught for the harm and severe emotional distress that they caused them.

### COUNT IX — Negligence – Sheriff Hodges, Officers Myers, Gillespie, Anderson, and Schmidt, and Whitley County Sheriff's Department

112. Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though set forth at length herein.

113. Defendants owed Mr. and Mrs. Vaught a duty.

114. Defendants breached their respective duty or duties by allowing their conduct or inaction to fall below the standard of care that they owed to Plaintiffs.

115. Defendants' breach of that duty proximately caused compensable injury to Plaintiffs.

### COUNT X: Loss of Consortium – Sheriff Hodges, Officers Myers, Gillespie, Anderson, and Schmidt, and Whitley County Sheriff's Department

116. Plaintiff incorporate by reference the allegations of the foregoing paragraphs as though set forth at length herein.

117. As a direct and proximate result of the actions, omissions, and/or failures by the Defendants, Mrs. Vaught has suffered the loss of consortium with her husband and has been injured and damaged by way of impairment and damage to the marital relationship, to include the loss of consortium, loss of services, loss of society, loss of company, loss of cooperation, loss of aid in the marital relationship, loss of love, loss of affection, loss of care, loss of companionship, as well as loss of assistance from one spouse to another.

118. Mrs. Vaught has suffered compensable injury as a result.

### REQUESTED RELIEF

119. Plaintiff respectfully requests:

    a. Damages including compensatory and punitive damages;

    b. Reasonable attorney's fees pursuant to 42 U.S.C. 1988 and Indiana Code § 34-23-1-1;

    c. All appropriate damages pursuant to Indiana Code § 34-23-1-1;

    d. All appropriate interest on all amounts that are recovered;

    e. All appropriate injunctive relief;

    f. The costs and expenses incurred in the prosecution of this action; and

    g. All other just and proper relief.

### DEMAND FOR A JURY TRIAL

120. Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States and Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully Submitted,

*/s/ Scott L. Barnhart*

Scott L. Barnhart, #25474-82
Keffer Barnhart LLP
230 East Ohio Street, Suite 400
Indianapolis, Indiana 46204
T: (317) 857-0160
F: (855) 641-5311
E: Barnhart@KBindy.com